# EXHIBIT B

STATE OF NEW YORK

STATE EDUCATION DEPARTMENT

The University of the State of New York

----------------------------------------------                    **SED File 37437**


In the Matter of :

NEW YORK CITY DEPARTMENT OF EDUCATION, Complainant,

-against-

Dharmvir Gehlaut,  Respondent.

---------------------------------------------------------------------------


**APPEARANCES**


For the Complainant:

Kiranjot Gill, Esq.
Counsel to the Chancellor
Office of Legal Services
New York City Department of Education
49-51 Chambers Street
New York, NY 10007

For the Respondent:

Oriana Vigliotti
New York State United Teachers
Office of the General Counsel
52 Broadway, 9th Floor
New York, NY 10004

**Introduction**

Pursuant to Education Law § 3020-a, The Department of Education of the City of New York (Department or DOE) commenced and filed Disciplinary charges SED 37437 on September 14, 2019 and additional charges SED 38527 on February 18, 2022 against Dharmvir Gehlaut (Respondent), a tenured teacher.  These charges were combined into one set under SED 37437.  The specific charges are set forth below. The undersigned was appointed hearing officer for this matter in October 2021.


**THE PROCEEDINGS**

A pre-hearing conference was held on November 17, 2021. Hearings were held on February 2, 9, 12, 18 and March 11, 18 , 25, 2022 via zoom. The hearings were fully transcribed.

Both parties were afforded a full opportunity to examine and cross-examine witnesses, submit documentary evidence, and present arguments in support of their respective positions. Each side presented oral summations at the close of the evidence and submitted precedential opinions and awards in support of their respective positions. The evidence adduced, and the positions and arguments advanced by the parties, have been fully considered in preparation and issuance of this Opinion and Decision.


The Department in its case-in-chief called 4 witnesses: 1) Student F.W aka E, 2) Student R.I or A,  3)  Principal Kelly Johnson and 4) Alberto Ravelo, Confidential Investigator, Special Commissioner of Investigation for New York City.

The Respondent called 4 witnesses: 1) Teacher S. Saha, 2) Student M.C  3) Student R.B  and (4) Dharmvir Gehlaut, who testified on his own behalf.

*1 References to the transcript will be denoted in brackets by the letter T followed by the relevant page number. (E.g., [T. ###], and references to numbered exhibits will be denoted in brackets followed either by the letter D for Department Exhibits number, followed by page number if needed, and R for Respondent Exhibits. (E.g., [D-E, 1, ]; and [R-E, 8]).*

**SPECIFICATIONS #1A**

**SPECIFICATION 1:** On or about and in between September 2018 and June 2019, Respondent stated in sum and substance to Student RI*:

- You are lucky you're in this country, because if you were in your country you would be in a rape camp and/or would be sold into marriage.

- You look good in your tank top.

- That Black lipstick was not good on you.

- Even though your average is 100 you do not deserve a 7**

**SPECIFICATION 2:** On or about and in between September 2018 and June 2019, Respondent, on multiple occasions:

a. Shook Student FT*'s hand

b. Grabbed Student FT's shoulder

c. Whispered to Student FT in sum and substance, superstar.

**SPECIFICATION 3:** On or about and in between September 2018 and June 2019, Respondent, told Student FT's father in sum and substance, if math does not work for your daughter she can become a supermodel, and/or she is very beautiful and/or could make two-hundred-thousand a year.

**SPECIFICATION 4:** On or about and in between September 2018 and June 2019, Respondent, on multiple occasions:

a. Stated in sum and substance to Student MS* that she was beautiful and/or pretty.

b. Pulled Student MS close to his face to talk to her.

c. Placed his hands on Student MS's lower back to walk her to her chair from the front of the classroom.


**SPECIFICATION 5:** On or about and in between August 2018, Respondent:

a. Communicated with Student FW* via Facebook messenger.

b. Sent Student FW lewd videos depicting scantily clad women and/or nude women and/or women stripping,

c. Sent Student FW messages asking Student FW if she would be in Singapore and/or to call him via Facebook messenger.

**SPECIFICATION 6:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent engaged in a course of conduct, which served no legitimate educational purpose.

**SPECIFICATION 7:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being.

**SPECIFICATION 8:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent engaged in conduct that caused students to feel uncomfortable.

**SPECIFICATION 9:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent knowingly acted in a manner to be injurious to the physical, mental, or moral welfare of a child.


**The foregoing constitutes:**

- Just cause for discipline under Education Law §3020-a;


    - Conduct unbecoming Respondent's position or conduct prejudicial to

3

the good order, efficiency, or discipline of the service;
- A violation of the by-laws, rules, and/or regulations of the Chancellor,

Department, School or District;

- Sexual Harassment;

- Sexual Misconduct;

- Verbal abuse;

- Misconduct;

- Substantial cause that renders Respondent unfit to perform his obligations properly to the service; and/or,
- Just cause for termination.


**SPECIFICATION #1B**

**SPECIFICATION 1:** On or about and in between September 2017 and June 2018, Respondent stated in sum and substance to Student RI:

- You are lucky you're in this country, because if you were in your country you would be in a rape camp and/or would be sold into marriage.

- You look good in your tank top.

- That Black lipstick was not good on you.

- Even though your average is 100 you do not deserve a 7**


**SPECIFICATION 2**: On or about and in between September 2017 and June 2018 Respondent engaged in a pattern of touching and/or hugging and/or placing his hands on and/or around female students.

**SPECIFICATION 3**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent engaged in conduct or a course of conduct, which served no legitimate educational purpose.

4

**SPECIFICATION 4**: By committing one, some or all of the actions described in Specifications 1 and 2, Respondent acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical wellbeing.

**SPECIFICATION 5**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent engaged in conduct that caused students to feel uncomfortable.

**SPECIFICATION 6**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent knowingly acted in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than 17 years old. The foregoing constitutes: - Just cause for discipline under Education Law §3020-a; - Conduct unbecoming Respondent's position or conduct prejudicial to the good order, efficiency, or discipline of the service; - A violation of the by-laws, rules, and/or regulations of the Chancellor, Department, School or District; - Sexual Harassment; - Verbal abuse; - Misconduct; - Conduct that could constitute a crime of Endangering the welfare of a child; - Substantial cause that renders Respondent unfit to perform his obligations properly to the service; and/or, - Just cause for termination.

_____

*Student names will be provided prior to trial.
**7 is the highest grade at the school and is equivalent to a grade of 100.


Students are referred to by initials in the Hearing, and by alphabet letter in the SCI report. Below is a student identification key.

RI = A

FT = B

MS = C

ES = D

MF= E

FW= F

5

**Position of the Parties**

***The Department***

The Department in its case-in-chief called four witnesses: 1) Student F.W 2) Student R.I  3)  Principal Kelly Johnson and 4) Alberto Ravelo, Confidential Investigator, Special Commissioner of Investigation for New York City.

The Department asserts that Dharmvir Gehlaut has crossed the line with inappropriate comments and touching directed towards students on multiple occasions and this necessitates termination.  In August - December of 2018, he is alleged to have texted with student FW, sending Student FW an inappropriate video.

Department's witness, Principal Kelly Johnson, started as Principal of Baccalaureate School for Global Education (BSGE) in 2007.  In March of 2020, four students went to Ms. Johnson to voice their complaints about Mr. Gehlaut's return to teaching after a reassignment.  Principal Johnson called a school meeting with all students from graduation year 2022 regarding concerns about Mr. Gehlaut's behavior. In that meeting, she heard from students that he touched them inappropriately and generally made them feel uncomfortable.  [T. 66-75.]  She took notes from the meeting, and substantiated the claims against Mr. Gehlaut in a meeting in June 2021. [D-E 10]

Student F.W was a student at Baccalaureate School for Global Education for 2 years.  She testified that Mr. Gehluat had friended her on Facebook and attempted to connect with her while they were both on vacation in Singapore in August 2018.  There was a text thread between them, which contained an appropriate video of a woman being stripped of her skirt. [Dept Exhibit 11].  Although the text thread with Gehlaut still existed, the video can no longer be viewed.

Student R.I testified that Mr. Gehlaut told her that if "she were back in her home country, she would be in a rape camp."  He also commented on her choice of tank top and color of her lipstick.   She further testified that he greeted students by shaking the male students hand and hugging female students. [T. 192] She testified that she witnessed Mr. Gehlaut greeted many

6

female students by hugging them, including herself and FW. [T. 211] Overall, the student consensus was that Mr. Gehlaut was too interested in their lives outside of class and asked questions about their lives in such a way to make them feel uncomfortable.

### The Respondent

The Respondent's called 4 witnesses: 1) Teacher S. Saha, 2) Student M.C  3) Student R.B  and (4) Dharmvir Gehlaut, who testified on his own behalf.

Dharmvir Gehlaut grew up in rural India and worked as a journalist for 15 years before he started teaching with the DOE in 2005. He began teaching at Baccalaureate School for Global Education as a math teacher in 2017.  [T. 347-351] He testified to his practice of standing by the door for each class change and offering a voluntary handshake greeting.  He denied that he ever hugged female students. [T. 364-366]

He denied ever sending a video of a woman being stripped to Student F.W. He communicated with F.W because of the conversation that started in a parent teacher conference and this appeared credible.  He further stated that he would never communicate again with a student via messaging or social media.   [T. 389]

Mr. Saha, a fellow teacher, testified that Respondent was well-liked by the students. He further testified students were competitive and his impression was that the class of 2022 cohort of students did not like Mr. Gehlaut.  He further noted that Principal Johnson's investigation included an email to the entire class of 2022, which he found to unusual and troubling  [T. 298-301]

Student M.C testified that he was in Mr. Gehlaut's class and that it was his custom to stand by the doorway and greet students with a handshake.  If students did not wish to shake hands, they were required to do so.  Further, he never witnessed Mr. Gehlaut hugging students. [T. 314- 317]

Student R.B testified that he was a current student of Mr. Gehlaut. He testified to Mr. Gehlaut's practice of shaking hands with students as they entered the class.  He never felt pressured to do so. He also never observed Mr. Gehlaut hugging any students, male or female.  [T. 326-329]

**Findings & Discussion**

The DOE asserts that hearsay evidence is admissible in administrative hearings and may be used to support a finding as long as it is believable, relevant and probative.  The DOE asserts that hearsay may be the sole proof in an administrative hearing.  The Department bears the burden to prove by a preponderance of the credible evidence each of the specifications with which Respondent is charged.

The Respondent emphasizes that due process and the right to confront one's accusers require that the DOE 3020a hearings be given an opportunity to cross examine.  Respondent argues that while hearsay evidence is admissible in these proceedings, hearsay evidence alone is insufficient to carry the Department's burden of proof in a 3020-a proceeding.

In this matter, direct evidence and testimony combined with hearsay evidence in the record combine together to provide the necessary quantum of proof needed to satisfy the preponderance of the evidence.

Here, after consideration of the entire record,

I find that the Department has met its burden

With respect to **Specifications #1A**:

2 (A), 5 (A), 5 (C) , 6, 7, 8, and 9.

The Department has not met its burden with respect to Specifications 2 (B), 2 (c), 3, 4 , and 5 (B).

With Respect to **Specifications #1B:**

Specification 1 is sustained.

Specification 2 is sustained in part and dismissed in part.


**Specification #1A**

**SPECIFICATION 1:** On or about and in between September 2018 and June 2019, Respondent stated in sum and substance to Student RI*:

- You are lucky you're in this country, because if you were in your country you would be in a rape camp and/or would be sold into marriage.

- You look good in your tank top.

- That Black lipstick was not good on you.

- Even though your average is 100 you do not deserve a 7**

**SPECIFICATION 1 was withdrawn by the Department in order to correct dates of occurrence.**

**SPECIFICATION 2:** On or about and in between September 2018 and June 2019, Respondent, on multiple occasions:

a. Shook Student FT*'s hand

b. Grabbed Student FT's shoulder

c. Whispered to Student FT in sum and substance, superstar.

**SPECIFICATION 2 (A) is sustained.**  Through the testimony of Teacher Gehlaut himself, it was his practice to offer handshakes to all students as they entered the classroom.  [T. 377]  A handshake is not an inappropriate touch, but within the confines of a teacher-student relationship, there is the potential for student discomfort when presented with a voluntary handshake. If you do not shake the teacher's hand, some students could apprehend that there is a risk of offending the teacher, even when the handshake is voluntary.   In the SCI Report, a student reported a lingering handshake which made her feel uncomfortable. [D-6, 23]

**SPECIFICATION 2 (B) is not sustained.** Student RI  testified that she did not observe this type of behavior with regards to FT. [T. 197]

**SPECIFICATION 2 (c) is not sustained** The SCI Investigation did not substantiate any inappropriate comments made to Student FT  Teacher did testify that he used this term, but did not whisper in FT's ear.  [t.  378]

**SPECIFICATION 3:** On or about and in between September 2018 and June 2019, Respondent, told Student FT's father in sum and substance, if math

does not work for your daughter she can become a supermodel, and/or she is very beautiful and/or could make two-hundred-thousand a year.

**Specification 3 is not sustained** The SCI Investigative report recounted that Student FT's father himself was not bothered by the comments. [D- E. 6, 18] Further, the SCI Investigation did not substantiate any inappropriate comments made to Student FT's father. [D-E. 6, 8]

**SPECIFICATION 4:** On or about and in between September 2018 and June 2019, Respondent, on multiple occasions:

a. Stated in sum and substance to Student MS* that she was beautiful and/or pretty.

b. Pulled Student MS close to his face to talk to her.

c. Placed his hands on Student MS's lower back to walk her to her chair from the front of the classroom.

*Specification 4 is not sustained* The SCI Investigation was unable to conduct an interview with Student MS and did not substantiate any inappropriate comments made to Student MS.

**SPECIFICATION 5:** On or about and in between August 2018, Respondent:

a. Communicated with Student FW* via Facebook messenger.

b. Sent Student FW lewd videos depicting scantily clad women and/or nude women and/or women stripping,

c. Sent Student FW messages asking Student FW if she would be in Singapore and/or to call him via Facebook messenger.

*SPECIFICATION 5 (A) and 5(C) are sustained.* Contained in Department Exhibit 11 and 12 are evidence of communication with Student FW via Facebook messenger. There was no evidence in the record to suggest the student was being lured into a sexual relationship. However, these messages served no educational purpose. Accordingly, I find that the Department satisfied the preponderance of the evidence to sustain these two charges.

**Specification 5(B) is not sustained.** Student FW testified credibly and spoke about this video in a consistent manner throughout the record, describing it as a video of a woman having her bottom stripped. However, there were shortfalls in describing the video in question. She could not describe the contents of the video with any detail. There was fuzziness as to

10

whether it was sent in August or December 2018.  Taken together, the Department did not provide enough evidence to meet its burden to prove by the preponderance of the evidence, the allegation in 5 (b) is not sustained.

**SPECIFICATION 6:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent engaged in a course of conduct, which served no legitimate educational purpose.

**SPECIFICATION 6 is sustained.**

**SPECIFICATION 7:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical well-being.

**SPECIFICATION 7 is sustained.**

**SPECIFICATION 8:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent engaged in conduct that caused students to feel uncomfortable.

**SPECIFICATION 8 is sustained.**

**SPECIFICATION 9:** By committing one, some or all of the actions described in Specifications 1 through 5, Respondent knowingly acted in a manner to be injurious to the physical, mental, or moral welfare of a child.

**SPECIFICATION 9 is sustained.**


**SPECIFICATION #1B**

**SPECIFICATION 1:** On or about and in between September 2017 and June 2018, Respondent stated in sum and substance to Student RI*:

- You are lucky you're in this country, because if you were in your country you would be in a rape camp and/or would be sold into marriage.

- You look good in your tank top.

- That Black lipstick was not good on you.

- Even though your average is 100 you do not deserve a 7**

**SPECIFICATION 1 is sustained.**  Student RI reported these specific comments to Principal Johnson and credibly testified at the hearing to the above comments.  Teacher Gehlaut flatly denied making any of these comments.  Student RI's recounting of this specific statement did not vary and was credible and provided the evidence to satisfy the preponderance of the evidence.

**SPECIFICATION 2**: On or about and in between September 2017 and June 2018 Respondent engaged in a pattern of touching and/or hugging and/or placing his hands on and/or around female students.

**Specification 2 is sustained in part and dismissed in part**. Student R.I testified that other female students experienced this pattern of touching and hugging, including student FW.  Respondent denied that he engaged in any pattern of touching and or hugging.  FW testified in the hearing, and when F.W spoke of Mr. Gehlaut's behavior that made her uncomfortable, did not testify to any pattern of touching or hugging [T. 120].  Principal Johnson's investigative notes did not report hugging. [D-E 8]   As such, it is the finding that there was not enough evidence to substantiate a pattern of hugging, but there was a preponderance of the evidence to substantiate a pattern of touching & placing hands on female students, particularly as they were at the board to do math problems.

**SPECIFICATION 3**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent engaged in conduct or a course of conduct, which served no legitimate educational purpose.

***SPECIFICATION 3 is sustained.***

**SPECIFICATION 4**: By committing one, some or all of the actions described in Specifications 1 and 2, Respondent acted in a manner that had or would have had the effect of unreasonably and substantially interfering with a student's mental, emotional, or physical wellbeing.

***SPECIFICATION 4 is sustained.***

**SPECIFICATION 5**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent engaged in conduct that caused students to feel uncomfortable.

***SPECIFICATION 5 is sustained.***

**SPECIFICATION 6**: By committing one, some or all of the actions described in Specification 1 and 2, Respondent knowingly acted in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than 17 years old.

***SPECIFICATION 6 is sustained.***

The foregoing constitutes:
- Just cause for discipline under Education Law §3020-a;
- Conduct unbecoming Respondent's position or conduct prejudicial to the good order, efficiency, or discipline of the service;
- A violation of the by-laws, rules, and/or regulations of the Chancellor, Department, School or District;
- Sexual Harassment; - Verbal abuse; - Misconduct; - Conduct that could constitute a crime of Endangering the welfare of a child; - Substantial cause that renders Respondent unfit to perform his obligations properly to the service; and/or,
 - Just cause for termination.
_____
*Student names will be provided prior to trial.
**7 is the highest grade at the school and is equivalent to a grade of 100.
.

***Discussion***

The Respondent has more than 17 years of service with the DOE. By witness accounts at the hearing, the Respondent was a competent teacher and challenges himself to continually grow by learning.  This benefits himself as well as his students.  Even in the absence of a specific rule that prohibited texting between a teacher and student, it is reasonable to expect that a pedagogue understands the boundaries that exist between teacher/student. Here, the Respondent should have understood that texting with a former student in a foreign country was improper.

Investigators Chin / Ravelo are experienced Investigators who conducted a professional investigation. The information gathered from the interview was relevant and probative because it helped illuminate the context of Mr. Gehlaut's  relationship with students.  Investigator Ravelo was credible in his testimony and the file was in good order.

The conduct alleged and proven in this proceeding is less egregious than the conduct in the Department's submitted awards and cases. Teacher Gehluat caused his students to feel uncomfortable by engaging in a pattern of touching.  His verbal harassment of student RI was unacceptable. I take note that despite her close relationship ith Guidance Counselor, Student RI did not report these during the year it happened and only did so 2 years later.   His texts with student FW had no educational value. However, these texts were not of sexual nature and did not invite Student FW into a sexual relatiionship.

### *Conclusion*

After a careful review of the hearing record, exhibits, transcript, and provided case law,  I find that the DOE has carried its burden under the preponderance of the evidence with respect to the specifications cited above; and collectively, they constitute sufficient misconduct and just cause to impose disciplinary action under Education Law § 3020-a. The Respondent exercised poor judgment and demonstrated conduct that was unbecoming of his pedagogical position, and his misconduct was prejudicial to the good order, efficiency, or discipline of the service.

The Department has established rules and regulations to protect children from harmful conduct of their teachers.  Respondent received copies of the Chancellor's Regulations against sexual harassment and is expected to follow these regulations. [D. Exhibi]    Respondent is expected to comport himself in a professional manner and not to interact with students in such a way to cause discomfort.

I find that Respondent showed some remorse, but did not take full responsibility for his actions in full.  For this reason, I conclude that a significant suspension is appropriate to signify the seriousness of the proven conduct.  Mr. Gehlaut should reconsider the handshakes before class and student contact in any way at the board.  Remarks about student appearance and other comments that might upset students should not be made.  I am hopeful that Teacher Gehlaut will learn from this experience and comport himself in a professional manner moving forward.  Any future behavior of this sort should result in termination.

**PENALTY**

The Department argues that termination is the appropriate penalty. Respondent counters that this is not a termination case given Respondent's service record.

Both parties have provided me for my review and consideration, prior arbitral and case decisions to support their respective arguments. I have reviewed all of the submissions in light of the severity of the sustained charges and the presence or absence of aggravating and mitigating factors that might impact the penalty imposed.

**For the misconduct proven herein, Respondent shall be suspended without pay for a period of 3 months.**

**Respondent shall attend sexual harassment training at the direction and expense of the Department.**

**Dated_Aug 5, 2022_____**

**New York, NY**

**Chris M. Kwok, Esq.**

**Hearing Officer**

15

**I, Chris M. Kwok, do hereby affirm upon my oath as a Hearing Officer that I am the individual described herein and who executed this instrument, which is my Award.**

**Chris M. Kwok, Esq.**


**Hearing Officer**