UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
**DHARMVIR GEHLAUT**,                                          :
                                                               :
                Plaintiff,    :
                                                               :   **MEMORANDUM DECISION AND**
       – against –                                        :   **ORDER**
                                                               :
                                                               :   22-CV-7862 (AMD) (LB)
**NEW YORK CITY DEPARTMENT OF**                                :
**EDUCATION** and **KELLY JOHNSON**,                           :
                                                               :
                Defendants.   :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On December 27, 2022, the *pro se* plaintiff sued the defendants for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law[1] ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[2] On March 13, 2023, the defendants moved to dismiss the complaint. (ECF No. 10.) For the following reasons, the motion is granted.

## BACKGROUND

The plaintiff is of Indian national origin and Hindu faith. (ECF No. 1 ¶ 1–2.) He started working for the New York City Department of Education ("DOE") in September 2005. (*Id.*)[3] In July 2017, the Baccalaureate School for Global Education ("BSGE"), a public high school in Astoria, Queens, hired him to teach math. (*Id.* ¶ 2.) According to the plaintiff, he was "the only

---

[1] N.Y. Executive Law §§ 290, *et seq.*

[2] N.Y.C. Administrative Code §§ 8-101, *et. seq.*

[3] Paragraph notations refer to the "Federal Complaint Addendum For Dharmvir Gehlaut." (ECF No. 1 at 8.)

one of [his] national origin and religion" at his school.  (*Id*. ¶ 3.)  During this time, Kelly Johnson was the principal of BSGE, a position she held until she left in 2022.  (*Id*. ¶ 4.)

The plaintiff asserts that the defendants discriminated and retaliated against him because of his national origin and religion.  In particular, he says that in May 2019, Johnson insulted his accent and knowledge of English, and on June 19, 2019, Johnson yelled at the plaintiff that "Indians are stupid."  (*Id*. ¶ 10.)  On June 25, 2019, the plaintiff was reassigned to a Temporary Reassignment Center—colloquially referred to as the "Rubber Room"—during which time the plaintiff did not teach classes.  (*Id*. ¶ 5.)  The plaintiff believes that Johnson "hired another math teacher . . . to replace [the plaintiff] while [he] was reassigned from her school."  (*Id*. ¶ 11).  He suffered from anxiety and depression as a result.  (*Id*. ¶ 5.)

On February 28, 2020, the New York City Special Commissioner of Investigation—an independent oversight agency for the DOE—informed the plaintiff that it had concluded an "unknown investigation" into his conduct.  (*Id*. ¶ 7.)  The plaintiff then received a letter from the DOE's Office of Personnel Investigation directing him to return to school on March 23, 2020. (*Id*. ¶ 8.)  The plaintiff relayed this to Johnson, who immediately emailed him a March 17, 2020 letter from Katherine G. Rodi, Executive Director of the DOE's Office of Employee Relations, in which Ms. Rodi advised the plaintiff that he was under investigation, that he could not "return to any DOE school without prior written permission," and that "all per session activities, after school activities and/or coaching responsibilities are suspended pending the resolution of this matter." (ECF No. 12-1 at 2.) [4]

---

[4] A court reviewing a motion to dismiss may consider (1) documents that are incorporated by reference in the complaint, and (2) documents that are "integral" to the complaint and of which the defendant has notice, even if the documents are not incorporated by reference.  *See Chambers v. Time Warner*, 282 F.3d 147, 152–54 (2d Cir. 2002); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1992); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003).

2

On July 20, 2020, the plaintiff "dual filed"[5] a discrimination charge with the New York State Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC") (ECF No. 17 at 6); in that filing, the plaintiff maintained that Johnson reassigned him because she was prejudiced against him.

On September 28, 2020, the plaintiff requested that the NYDHR dismiss his complaint for administrative convenience.[6] (ECF No. 17 at 15.) He says that he "never received [a] dismissal letter;" several years later, on February 8, 2022, he "followed up," "asking if the letter was ever issued." (*Id.* at 15.) Shortly thereafter, NYDHR sent him the dismissal letter, which was dated November 27, 2020. (*Id.*) The plaintiff also claims that he did not receive a right-to-sue letter from the EEOC in connection with the July 20, 2020 charge;[7] he contacted the EEOC on February 16, 2022, which then sent him a copy of the letter, dated February 17, 2021. (*Id.*)

On June 25, 2021, the DOE served the plaintiff with nine disciplinary specifications under § 3020-a of the New York Education Law.[8] (ECF No. 12-2). According to the plaintiff, Johnson filed the disciplinary charges in retaliation for his July 20, 2020 discrimination charge.

---

[5] The plaintiff's allegation that he "dual filed" his discrimination charge appears in his opposition to the motion to dismiss. As the plaintiff is *pro se*, the Court may consider the facts alleged in the complaint as well as those in the plaintiff's opposition papers. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("Because [the plaintiff] is proceeding *pro se*, the Court may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint.").

[6] Under New York Executive Law § 297(9), a plaintiff who has filed a charge of discrimination with either the NYSDHR or the EEOC cannot bring a lawsuit based on those claims, unless the plaintiff "has dismissed such complaint on the grounds of administrative convenience." *Moodie v. Fed. Rsrv. Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995) (citing N.Y. Exec. L. § 297(9)).

[7] The EEOC right-to-sue letter serves the same purpose as the NYSDHR dismissal letter—permitting the plaintiff to bring a suit in federal court.

[8] Tenured teachers in New York state are subject to termination for "just cause" under New York Education Law § 3020. Pursuant to § 3020-a, the teacher may request a hearing at which they may challenge any disciplinary action filed and defend the right to retain their position.

(ECF No. 1 ¶ 16.) Independent hearing officer Chris M. Kwok conducted a week-long virtual hearing in February and March 2022. On August 5, 2022, Kwok issued his decision,[9] which substantiated some, but not all, of the disciplinary charges and suspended the plaintiff for three months without pay, effective September 5, 2022.[10] (*Id*. ¶¶ 16–17.)

On April 13, 2022, the plaintiff filed a second charge with the NYDHR and the EEOC, in which he claimed that Johnson initiated disciplinary proceedings against him illegally. (*Id*. ¶ 16.) On August 4, 2022, he requested that the NYDHR charge be dismissed for administrative convenience, and, on October 19, 2022, he asked EEOC to close its investigation. The plaintiff does not say whether he received a dismissal letter from the NYDHR, but says that the EEOC issued him a right-to-sue letter on November 2, 2022. (*Id*. at 10.) He filed a complaint in this district on December 27, 2022.

On March 13, 2023, the defendants moved to dismiss the complaint. They argue that the plaintiff did not give the required statutory notice, that almost all his claims are time-barred, and that he does not plead facts sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* ECF No. 13.)

---

[9] The plaintiff did not attach the Kwok's August 5, 2022 decision to the complaint. However, as with Katherine Rodi's March 17, 2020 re-assignment letter, Kwok's report is incorporated by reference in the complaint, so the Court considers it in deciding this motion. Further, the Court takes "judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002); *see also Arroyo v. Dep't of Educ. of City of New York*, No. 19-CV-7416, 2020 WL 4570380, at *7 (S.D.N.Y. Aug. 6, 2020) ("[T]he Court takes judicial notice of the § 3020-a hearing decision . . . .").

[10] According to Kwok's report, the DOE initiated § 3020-a proceedings against the plaintiff because he "crossed the line with inappropriate comments and touching directed toward students on multiple occasions." (ECF No. 12-2 at 8.) The report discusses allegations that he texted female students, hugged and touched female students inappropriately, and made inappropriate comments toward female students, including telling a student, "[y]ou are lucky you're in this country, because if you were in your country you would be in a rape camp and/or would be sold into marriage." (*Id*. at 13.)

**LEGAL STANDARD**

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will be considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010). Although "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

The Court must "construe [a *pro se*] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id*.; *see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC*, No. 13-CV-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

**DISCUSSION**

The plaintiff asserts general "discrimination and retaliation" based on the following allegations: in May 2019, Johnson insulted his accent and knowledge of English; in June 2019,

5

Johnson yelled, "Indians are stupid;" on June 25, 2019, he was reassigned to the Rubber Room; on March 17, 2020, he was reassigned again; and on June 25, 2021, the DOE initiated § 3020-a proceedings against him. Reviewing the complaint "to raise the strongest arguments that it suggests," the Court interprets the complaint to allege (i) Title VII discrimination and retaliation claims against the DOE, and (ii) NYSHRL and NYCHRL discrimination and retaliation claims against the DOE and Johnson.[11] Accordingly, the Court analyzes whether any of the plaintiff's allegations raise a colorable claim under Title VII or New York state law.

## I. Title VII Claims

As discussed below, the plaintiff's Title VII claims arising out of the May and June 2019 allegations must be dismissed on procedural grounds. His remaining claims are dismissed under Federal Rule of Civil Procedure 12(b)(6).

### a. Exhaustion

"Title VII . . . require[s] claimants to file a charge of discrimination with the EEOC [or with the similar state agency, here, the New York State Division of Human Rights] within 300 days of the alleged discriminatory employment action; claims for acts that occurred more than 300 days before the filing are time-barred in federal court." *Adams v. New York State Educ. Dep't*, No. 08-CV-5996, 2010 WL 624020, at *32 (S.D.N.Y. Feb. 23, 2010), *report and recommendation adopted in part*, 705 F. Supp. 2d 298 (S.D.N.Y. 2010). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F3d 683, 686 (2d Cir. 2001) (citations omitted).

---

[11] The defendants argue—and the plaintiff concedes—that there is no individual liability under Title VII of the Civil Rights Act of 1964. (ECF No. 13 at 11; ECF No. 17 at 11.) Accordingly, the Title VII claims against Johnson are dismissed.

6

The plaintiff filed his first charge with the EEOC on July 20, 2020; thus, alleged acts that predate September 24, 2019 (300 days before July 20, 2020) are time-barred.  The discrimination and retaliation claims associated with Johnson insulting the plaintiff's accent and knowledge of English, telling him that "Indians are stupid," and reassigning him from BSGE the first time occurred before September 24, 2019 and must therefore be dismissed.

      **b.**      **Failure to State a Claim**

The Court construes the remaining Title VII allegations to assert a discrimination claim in connection with the March 17, 2020 reassignment, and a retaliation claim in connection with the June 25, 2021 notification of § 3020-a proceedings.

      *i.*      *Discrimination*

Employment discrimination cases arising under Title VII are governed by the burden-shifting framework established by the U.S. Supreme Court in 1973.  *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973).  A plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* to defeat a motion to dismiss.  *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) ("[T]he district court erred when it granted Defendants' motion for judgment on the pleadings on the grounds that Vega had not established a prima facie case of discrimination."). Rather, because "a temporary 'presumption' of discriminatory motivation" is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 306, 311 (referring "to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation").  The underlying test, however, remains the same: a plaintiff must show that he (i) is a member of a protected class, (ii) was qualified for the relevant position, (iii) experienced an

7

adverse employment action, and (iv) such action occurred under circumstances giving rise to an inference of discrimination.  *See Vega*, 801 F.3d at 85.

The defendants argue that the plaintiff's reassignment and disciplinary proceedings do not constitute adverse employment actions, which are defined as "materially adverse change[s] in the terms and conditions of an individual's employment."  *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation omitted).  To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id*.  Adverse employment actions include termination, demotion, a material loss of benefits and significantly diminished responsibilities, among other things.  *Id*.  The Supreme Court has held that reassignment can constitute adverse employment action if it comes with "significantly different responsibilities."  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

The plaintiff did not teach any classes during his period of reassignment; instead, he was required to sit in the "Rubber Room" each day.  (ECF No. 17 at 18.)  He did not interact with students or other teachers—indeed, it is unclear what the plaintiff did during this time.  This is a significant change in responsibilities establishing an adverse employment action.  *See, e.g.*, *Thomas v. N.Y.C. Dep't. of Educ.*, No. 10-CV-464, 2021 WL 2646350, at *5 (E.D.N.Y. June 28, 2021); *Batyreva v. N.Y.C. Dep't of Educ.*, No. 07-CV-4544, 2010 WL 3860401, at *12 (S.D.N.Y. Oct. 1, 2010), *aff'd*, 464 F. App'x 31 (2d Cir. 2012) (reassignment to the Teacher Reassignment Center is "plainly an adverse employment action").

The plaintiff has not shown, however, that his reassignment occurred under circumstances giving rise to an inference of discrimination.  Notably, the New York City Special Commissioner of Investigation, an independent agency, conducted the investigations into the

8

plaintiff's conduct, not the DOE.  The plaintiff does not allege that Katherine Rodi, who signed the letter reassigning the plaintiff to the Rubber Room, or any other member of Commissioner of Investigation or Office of Employee Relations, discriminated against him.

The plaintiff maintains that Johnson's reference to his accent and knowledge of English in May 2019 and her remark that "Indians are stupid" in June 2019 "arguably support the inference that Principal Johnson had negative feelings about employees from Indian race/national origin."  (ECF No. 17 at 13.)  While "[a]s a general matter, verbal comments may raise an inference of discrimination," this is not true "where they lack a causal nexus to the [adverse] decision."  *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017).  Here, the plaintiff does not plead facts explaining how Johnson's remarks in the first half of 2019 had anything to do with another entity's decision almost one year later.  *See Testa v. CareFusion*, 305 F. Supp. 3d 423, 434 (E.D.N.Y. 2017) (allegedly ageist comments made four months before the plaintiff's termination insufficient to support a claim of discriminatory intent).

Further, "'stray remarks' alone do not support a discrimination suit."  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).  In determining whether a remark is probative of discriminatory intent, courts have "considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."  *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

With respect to the first factor, there is no evidence that Johnson "possessed [the] control, oversight, and decision-making authority" to reassign the plaintiff or investigate him.  *Allen v.*

9

*City of New York*, No. 18-CV-9663, 2020 WL 4287361, at *3 (S.D.N.Y. July 27, 2020) (noting that "the plaintiff does not allege that Assistant Principal [] was a decision-maker" for "stray remark" analysis). Nor does the plaintiff allege that Johnson reassigned him. In fact, with respect to the March 2020 reassignment, the letter that Johnson sent to the plaintiff was signed by Katherine Rodi, not Johnson.[12] Accordingly, Johnson is not a "decision-maker," and "courts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim." *Baez v. Amazon.com Servs., LLC*, 659 F. Supp. 3d 339, 350 (E.D.N.Y. 2023) (citation omitted). The Title VII discrimination claim is therefore dismissed.

        ii.    *Retaliation*

To establish a prima facie case of retaliation, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001). "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotations and citation omitted). "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three

---

[12] The parties do not identify who made the decision to reassign the plaintiff to the Rubber Room in 2019.

months will break the causal inference." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010)); *see also Graham v. Macy's, Inc.*, No. 14-CV-3192, 2016 WL 354897, at *23 (S.D.N.Y. Jan. 28, 2016) ("[C]ourts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship."), *aff'd*, 675 F. App'x 81 (2d Cir. 2017).

The plaintiff claims that the DOE retaliated against him in violation of Title VII by initiating § 3020-a proceedings after he filed an EEOC charge against Johnson. However, the plaintiff "dual filed" his EEOC and NYSDHR charges against Johnson on July 20, 2020, almost a year before he received the disciplinary notification. The plaintiff does not explain this lag in time between his protected activity and the DOE's alleged retaliation. His mere assertion that the two are connected is insufficient.

The plaintiff's retaliation claim is also subject to dismissal because "the 'gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity,' such that 'an inference of retaliation does not arise.'" *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-10023, 2020 WL 2836760, at *12 (S.D.N.Y. May 31, 2020) (cleaned up) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). According to Chris Kwok's disciplinary report, the investigation into the plaintiff was launched in 2018—well before the plaintiff's protected activity. Indeed, it appears that the DOE initiated proceedings against the plaintiff because his female students made allegations against him. (ECF No. 13 at 28–29; *see generally* ECF No. 10-2.) "[W]here the pleadings reveal 'adverse [disciplinary] actions [that] were both part, and the ultimate product, of an extensive period of progressive discipline' that began before any protected activity, the Court will not infer retaliatory animus based on temporal proximity alone.'" *Lawtone-Bowles v. City of New York*, No. 17-CV-8024, 2019 WL 652593, at

11

\*5 (S.D.N.Y. Feb. 15, 2019) (quoting *Slattery*, 248 F.3d at 95); *see also Lopez v. N.Y.C. Dep't of Educ.*, No. 17-CV-9205, 2020 WL 4340947, at \*13 (S.D.N.Y. July 28, 2020) (finding no inference of retaliatory motive where the plaintiff's own e-mails "demonstrate[d] that the investigation relating to the disciplinary charges was already in progress in December 2016, over a month before he purportedly engaged in these protected activities").

Accordingly, the plaintiff's Title VII claims of discrimination and retaliation are dismissed.

## II. Human Rights Law Claims

The Court also addresses the plaintiff's state-law claims of discrimination and retaliation against the DOE and Johnson, respectively. As discussed below, all claims against the DOE are dismissed under the New York Education Law's notice requirement; all remaining claims against Johnson are similarly dismissed under either the applicable statute of limitations or Federal Rule of Civil Procedure 12(b)(6).

### a. Notice

Section 3813(1) of the New York Education Law requires a plaintiff bringing any claim against a school district, board of education, or any officer thereof to present a written notice of the claim to the governing body of the school board within three months of the accrual of the claim. N.Y. Educ. Law § 3813(1). This notice requirement applies to all state and municipal claims, including "to causes of action sounding in discrimination, retaliation, and defamation." *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011) (collecting cases); *see also United States v. N.Y.C. Dep't of Educ.*, No. 16-CV-4291, 2017 WL 435940, at \*6 (S.D.N.Y. Jan. 31, 2017) (notice of claim requirement applies to "claims against school districts and their

officers under the NYSHRL and NYCHRL").[13]  This requirement is a condition precedent to file an action in New York against that school board or any officer thereof.  *Smith*, 808 F. Supp. at 578.  The notice must state "the nature of the claim" and "the time when, the place where and the manner in which the claim arose."  *Rettino v. N.Y.C. Dep't of Educ.*, No. 19-CV-5326, 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020).  The requirement does not apply to federal claims.  *Courtemanche v. Enlarged City Sch. Dist. of City of Middletown, N.Y.*, 686 F. Supp. 1025, 1032 (S.D.N.Y. 1988). Section 3813(1) also does not require that a notice of claim be filed in cases involving employees of school districts or boards who are not officers thereof.  *Spencer v. City of New York*, 2007 WL 1573871 at *3 (S.D.N.Y. May 30, 2007).  Finally, it must be apparent from

---

[13] The state of the law in this circuit on whether a NYSHRL claim against a school district requires a Notice of Claim is not clear.  The Second Circuit decided that such a claim does not require a Notice of Claim pursuant to § 3813(1), *see Carter v. Syracuse City Sch. Dist.*, No. 15-CV-2395, 2016 WL 3671631 (2d Cir. 2016), but then withdrew that decision and remanded the case for the district court to consider whether the New York Court of Appeals' decision in *Margerum v. City of Buffalo*, 28 N.E.3d 515 (N.Y. 2015)—which held that "a notice of claim need not be filed for a Human Rights Law claim against a municipality" if the action is not based in tort, *id*. at 516—affected the analysis, *see Carter v. Syracuse City Sch. Dist.*, 656 F. App'x. 566, 567 (2d Cir. 2016) (summary order).  Since then, courts in the Second Circuit have disagreed on *Margerum*'s application.  *Compare Caputo v. Copiague Union Free School District*, No. 15-CV-5292, 2016 WL 6581865 at *6 (E.D.N.Y. Nov. 4, 2016) (claims under NYSHRL "are not tort action[s] under Education Law [§ 3813(2)] and therefore a notice of claim for a NYSHRL claim against a school district or its personnel is not required"), *with United States v. N.Y.C. Dep't of Educ.*, No. 16-CV-4291, 2017 WL 435940, at *6 (S.D.N.Y. Jan. 31, 2017) (NYSHRL and NYCHRL employment discrimination claims are not subject to General Municipal Law § 50-e's notice of claim requirement because they are not founded in tort but are subject to New York Education Law § 3813(1)'s notice of claim requirement).

Most courts have adopted Judge Lewis Kaplan's rationale in *United States v. N.Y.C. Dep't of Educ.*, that "Section 3813(1) is narrower than section 3813(2) in that it only applies to claims against school districts and their officers, but broader than section 3813(2) in that it is not limited to claims founded upon tort;" as a result, "the notice of claim requirement applies to employment discrimination claims against school districts and their officers under the NYSHRL and NYCHRL." 2017 WL 435940, at *6 (S.D.N.Y. Jan. 31, 2017).

the complaint that the plaintiff filed a timely notice of claim. *Id.*; *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 (S.D.N.Y. 2006).

The plaintiff has not pled that he served a notice of claim on the "governing body of [the] district" in compliance with Section 3813(1). This failure is a fatal defect requiring dismissal. *Bender v. N.Y.C. Health & Hosps. Corp.*, 345 N.E.2d 561, 563 (N.Y. 1976); *see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 376, 411 (S.D.N.Y. 2013).

The plaintiff argues that his EEOC complaint is sufficient to satisfy this requirement; however, an EEOC charge can substitute for a notice of claim "only under the rare and limited circumstance where the EEOC charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period." *Brtalik v. S. Huntington Union Free Sch. Dist.*, No. 10-CV-0010, 2010 WL 3958430, at *5 (E.D.N.Y. Oct. 6, 2010); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 184-85 (S.D.N.Y. 2011). The complaint does not include any such allegations. Though he claims that he filed a charge with the EEOC on July 20, 2020, the plaintiff does not allege that he served the EEOC charge on the governing body of the district, nor does he plead facts that would remove this case from Section 3813's requirements. The EEOC charge therefore was not a substitute for the required notice of claim. *See Brtalik*, 2010 WL 3958430, at *5. All state-law claims against the DOE are therefore dismissed.

      b.    **Statute of Limitations**

The plaintiff's state law claims against Johnson in her individual capacity are subject to a three-year statute of limitations. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012). Accordingly, any NYSHRL or NYCHRL claim that accrued before December 27, 2019—three years before the plaintiff filed his complaint on December 27, 2022—is time-barred. As discussed, the plaintiff's chief allegations involve conduct occurring

14

in May 2019, June 2019, March 17, 2020, and June 25, 2021.  Any claims—whether discrimination or retaliation—premised on the May and June 2019 events are untimely under the statute of limitations and must be dismissed.  The remaining claims are timely, but must be dismissed.[14]

    *a.*    *Failure to State a Claim*

The plaintiff's state-law claims of discrimination and retaliation in connection with the second reassignment and the § 3020-a disciplinary proceedings are without merit for the reasons explained above.  The plaintiff has not demonstrated that his reassignment to the Rubber Room occurred under circumstances giving rise to an inference of discrimination.  Rather, Johnson's alleged comments are non-actionable "stray remarks."  *Baez*, 659 F. Supp. 3d at 350.  Further, the investigation underpinning the plaintiff's § 3020-a disciplinary proceedings began in 2018, long before the plaintiff filed his first EEOC charge against Johnson in July 2020.

Accordingly, all NYSHRL and NYCHRL claims against Johnson are dismissed.

---

[14] The defendants concede that the remaining two state-law claims against Johnson are timely.  (ECF No. 13 at 18.)

15

## CONCLUSION

For these reasons, the defendant's motion to dismiss is granted. As none of the defects can be cured by amendment, the complaint is dismissed with prejudice.

Although the plaintiff paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

                                                        s/Ann M.Donnelly  
                                                       ANN M. DONNELLY  
                                                       United States District Judge

Dated:  Brooklyn, New York  
          February 6, 2024